UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OLYMPICORP INTERNATIONAL, LLC and
THOMAS KONTOGIANNIS,

        Plaintiffs,

  -against-

FARM RICH FOODS, LLC, *doing business as*
FARM RICH FOODS, et al.,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

13-cv-4094 (ENV)

VITALIANO, D.J.,

On July 11, 2013, plaintiffs Thomas Kontogiannis, appearing *pro se*, and Olympicorp International, LLC ("Olympicorp"), purporting to appear *pro se*, filed this action against more than 40 named individual and corporate defendants, alleging violations of the Racketeering Influence and Corruption Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as state law claims of fraud, theft, civil conspiracy, intentional infliction of emotional distress, unjust enrichment, and breach of fiduciary duties. For the reasons that follow, the complaint is dismissed with prejudice as to Kontogiannis' RICO claims, and without prejudice as to all other claims.[1]

---

[1] The logic of the finding as to the RICO claim Kontogiannis filed applies, obviously, with equal vigor to the putative RICO claim of Olympicorp. However, a limited liability company must appear by counsel. Its claims cannot be filed *pro se*. So, since its claims have not been effectively filed, they cannot be dismissed with prejudice. *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ("corporations, partnerships, or associations [cannot] appear in federal court otherwise than

1

## Background

On or about October 15, 2010, Kontogiannis pled guilty before another judge of this Court to conspiracy to commit bank and wire fraud; he was sentenced on October 15, 2011 to 108 months imprisonment, and was ordered to pay both a forfeiture judgment of $92 million and restitution in excess of $98.3 million, owed jointly and severally by Kontogiannis and his co-defendants, to the Federal Deposit Insurance Corporation ("FDIC") and DLJ Mortgage Capital, Inc. ("DLJ"). *See* (Judgment, No. 09-cr-360, Dkt. No. 217). In a parallel civil suit before this Court, DLJ asserted RICO claims against Kontogiannis in connection with the same mortgage fraud scheme for which he was convicted. In that case, the Court dismissed DLJ's claims as unripe, and permitted DLJ to file its pendant state law claims against Kontogiannis in a state court of appropriate jurisdiction. *See DLJ Mortgage Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225 (E.D.N.Y. 2010). Incidental to DLJ's subsequent lawsuit in state court, Kontogiannis filed an action in this Court on June 5, 2012, against the County Clerk of New York County, alleging that his constitutional right to access the Clerk's electronic filing system had been denied. That complaint was dismissed on June 19, 2012.

There is yet another ongoing case pending in Supreme Court, Kings County, that involves Kontogiannis' mortgage fraud empire. In that case, Kontogiannis was accused of usurping control of Blue Ridge Farms ("Blue Ridge"), a supplier of prepared deli products, for the purpose of using it as a means of obtaining "straw

---

through a licensed attorney").

buyers" for future real estate scams, and otherwise looting the company. By order dated September 10, 2009, Supreme Court confirmed an arbitration award in favor of June Siegel, a former owner of Blue Ridge, against Kontogiannis in the amount of $8,246,819.46. *See generally Blue Ridge Farms v. Kontogiannis*, Index No. 023246/2008 (Sup. Ct. Kings Cnty. filed Aug. 19, 2008).

Unchastened by his past judicial failures, Kontogiannis avers, in a rambling complaint in this action, that he is entitled to a judgment of $120 million. His relationship with Blue Ridge and its former owners, the Siegel family, lies at the crux of this action. Putting his own unique spin on the events described above, Kontogiannis alleges that, in 2004, he was approached by the Siegels, on behalf of Blue Ridge, which was seeking funding to expand its operations and settle outstanding debts. (Compl. ¶¶ 50–53). Kontogiannis agreed, he says, to invest $20 million in Blue Ridge, allegedly "unaware" of "a steady stream of false representations" and omissions by the Siegels about the extent of Blue Ridge's debts and the likelihood of a return on Kontogiannis's investment. (Compl. ¶¶ 54–64). In fact, according to Kontogiannis, it was the *Siegals* who were looting the assets of Blue Ridge and conducting illegal money laundering schemes, among other alleged criminal activities; he also avers that they were responsible for "a scheme whereby they offered to purchase eight homes as straw borrowers," precisely the kind of conduct of Kontogiannis's own crimes. (Compl. ¶¶ 73, 82–92). Further still, Kontogiannis accuses Blue Ridge of engaging in a price gauging scheme with a series of prominent grocery chains (also named as defendants here) meant to "inflate the prices of Blue Ridge products to [sic] unsuspecting consumers." (Compl.

¶ 121).

Upon learning of these alleged misdeeds, Kontogiannis claims to have confronted the Siegels, threatening that he would expose their apparent criminal activities. (Compl. ¶ 126). At that point, though, the Siegels allegedly threatened him in return with death should he contact the authorities. They claimed, he says, connections with crime syndicates, such as the Gambino crime family (also a named defendant here). He also claims the Siegels had a history of having their business rivals "burnt alive." According to Kontogiannis, the Siegels told him "that they had received approval from the Gambino's [sic] to have Kontogiannis and his loved ones [] meet the same fate." (Compl. ¶ 129). Notwithstanding these threats, apparently, Kontogiannis initiated this lawsuit.

## Standard of Review

A civil complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not necessarily require a plaintiff to provide "detailed factual allegations" in support of his claims in order to survive a motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Indeed, mere conclusory allegations or "naked assertions" will not survive a motion to dismiss without at least some "further factual enhancement" to support the claims alleged. *Twombly*, 550 U.S. at 557.

When a plaintiff proceeds without legal representation, the district court must regard that plaintiff's complaint in a more liberal light, affording the

pleadings of a *pro se* litigant the strongest interpretation possible. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 471 (2d Cir. 2006) (per curiam). Even so, the Court must dismiss a *pro se* complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). With this in mind, even when a court finds that the *pro se* complaint fails to state a claim on which relief may be granted, the court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

With respect to the substance of the federal claims this complaint seeks to advance, it must be kept in mind that "RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)). RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). When § 1962 is violated, certain RICO provisions authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees. *Id.* RICO is, in theory, a powerful

weapon for aggrieved parties, but in practice, it is often invoked inappropriately where it becomes a mere saber to be rattled. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (conducting a "rough survey" of 145 RICO cases in the Southern District of New York between 2004 and 2007, finding that of 36 civil RICO cases resolved on the merits, none of the RICO plaintiffs succeeded). With such potential for abuse, [doorkeeper] examination of RICO claims is essential, and dismissal of those that are frivolous or malicious should come as expeditiously as possible. *See Bell v. Hubbert*, No. 95-civ-10456, 2007 WL 60513 at *5 (S.D.N.Y. 1996); *accord* 28 U.S.C. § 1915(e)(2)(B) (*pro se* complaints to be dismissed if "frivolous or malicious").

To sufficiently plead a civil RICO claim, in any event, a plaintiff must show: "(1) a violation of the RICO statute; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal quotations omitted). However, civil RICO claims are governed by a four-year statute of limitations period, which begins to run after a plaintiff has actual or inquiry notice of his injury, "even where the full extent of the RICO scheme is not discovered until a later date, so long as there were storm warnings that should have prompted an inquiry." *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) (internal quotations omitted).

## Discussion

A. <u>RICO Claims</u>

A host of procedural and substantive shortcomings plague Kontogiannis's claims. Foremost is that of timeliness under RICO. Kontogiannis does not allege when, exactly, any of the aggrieving conduct occurred, except to say that he began his dealings with (and presumably his investment in) Blue Ridge in early 2004. Even given the liberal interpretation that the Court affords the filings of a *pro se* litigant, there is no reason to believe that any injury to Kontogiannis, arising from the pleaded facts, first became clear to him as late as July 2009, that is, four years prior to the initiation of this suit.[2] Kontogiannis appears to have been five years late in reacting not only to the "storm warnings," but to the storm itself. Moreover, the pleaded state law claims, which Kontogiannis relies on to suggest the existence of a racketeering enterprise, appear from the complaint to have accrued in 2004, beyond the backward reach of any applicable state statute of limitations. The opportunity to plead RICO claims allegedly springing from the same misconduct is similarly behind Kontogiannis.

Finally, the results of Blue Ridge's state arbitration against Kontogiannis serve to infuse the instant complaint with an undeniable flavor of frivolousness. The Blue Ridge management as bad actors claim was effectively lost there, when it was determined by the arbitration panel—and adopted by the trial court—that Kontogiannis had been the one to fraudulently raid the assets of Blue Ridge. *See*

---

[2] Indeed, before the limitations period had expired, Kontogiannis was already in prison (since May 16, 2008) in connection with yet another criminal scam. *See* (Compl. ¶ 8, No. 08-cv-4607, Dkt. 1)).

*Blue Ridge Farms v. Kontogiannis*, No. 023246/2008 (Sup. Ct. Kings Cnty. Sept. 10, 2009). That issue cannot be relitigated here. Even were Kontogiannis' RICO claims timely, they would be clearly without merit. At bottom, Kontogiannis's RICO claims—and the state law claims which he attempts to transform into RICO claims—cannot proceed. *See Goldfine v. Sichenzia*, 118 F. Supp. 392, 398–99 (S.D.N.Y. 2000) ("RICO was not enacted for the purpose of providing a Federal forum and treble damages for nearly every conceivable contract action under State law"). As a result, they must be dismissed with prejudice.

B. <u>State Law Claims</u>

Kontogiannis contends that the alleged actions of defendants have given rise to several state law claims, namely fraud, unjust enrichment, civil conspiracy, intentional infliction of emotional distress, and theft. Lacking a valid RICO claim to support federal question jurisdiction—and therefore pendant jurisdiction over related state law claims, *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)—subject matter jurisdiction over the state law claims might still be founded if plaintiff can establish diversity. He cannot.

It is well settled that 28 U.S.C. § 1332 "requires complete diversity between all plaintiffs and all defendants." *Cushing v. Moore*, 970 F.2d 1103, 1006 (2d Cir. 1992). In this case, Kontogiannis is a citizen of New York, where he had been domiciled prior to his initial incarceration in 2008. *See* (Compl. ¶ 8, No. 08-cv-4607,

Dkt. 1).³ On the face of his complaint, Kontogiannis names many citizens of New York as defendants, including Blue Ridge, which is "a corporation registered in the state of New York with a principle place of business located at 3301 Atlantic Avenue, Brooklyn, New York." (Compl. ¶ 8); *see* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). Since Kontogiannis and multiple defendants are citizens of the sane state, there is a lack of complete diversity. As a consequence, the Court lacks subject-matter jurisdiction to hear the case, and a court must dismiss a case *sua sponte* when it finds subject matter jurisdiction lacking. *See Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 58 (2d Cir. 1997).

## Conclusion

For the reasons stated above, the complaint is dismissed with prejudice as to Kontogiannis's RICO claims. All claims brought by Olympicorp and the state law claims brought by Kontogiannis are dismissed without prejudice, and with leave to

---

³ Although Kontogiannis is a federal prisoner, currently incarcerated at Fort Dix, in New Jersey, (Compl. ¶ 5), "it is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his preincarceration domicile." *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004). Where, as here, a prisoner does not allege diversity of citizenship as a basis for jurisdiction, and pleads no facts sufficient to suggest that he has intended to change his domicile to his place of incarceration, it is appropriate to assume that his preincarceration domicile is preserved. *See id.* Even if Kontogiannis were to have argued that he wished to be domiciled in New Jersey for the purposes of diversity jurisdiction, complete diversity would not have been satisfied, for he has named a flock of New Jersey defendants, as well. *See, e.g.*, (Compl. ¶¶ 33–36).

replead. The grant of leave as to the balance of the claims brought by Kontogiannis is conditioned on repleading in an appropriate state forum.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:    Brooklyn, New York
           November 22, 2013

/S/ Judge Eric N. Vitaliano

_____
ERIC N. VITALIANO
United States District Judge